[Civ. No. 1801.    Second Appellate District.—November 20, 1916.]

R. G. TRYON et al., Copartners, etc., Respondents, v. C. N. CLINCH et al., Defendants; W. F. MARKHAM, Appellant.

COST OF STREET IMPROVEMENT—JOINT LIABILITY OF DEFENDANTS—EVIDENCE—UNSUPPORTED FINDING.—In an action to recover upon a common count for labor performed and materials furnished in improving a street which the defendants had opened through a tract of land owned by them in severalty, a finding in favor of the plaintiffs against the defendants jointly for the full value of the work done, is unwarranted, where the only evidence in support of the finding, and upon which to base any authority in the defendants who ordered the work to bind their codefendant, was the fact that he owned part of the land fronting on the street, was interested in and wished to have it improved, and upon leaving for the

East, stated that he would leave the improvement of the street to them.

ID.—LETTER AUTHORIZING WORK—SIGNATURE AFTER COMPLETION—UNAUTHORIZED FINDING OF LIABILITY FOR FULL COST. — In such an action, the defendant who did not order the performance of the work, cannot be held liable for the entire cost by reason of his having attached his signature to a letter written by the plaintiffs to the defendants who actually ordered the work and which formed the contract under which the work was done, where such signature was not attached until after all the work sued for had been performed.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge.

The facts are stated in the opinion of the court.

Harlan G. Palmer, for Appellant.

A. J. Sherer, and Arthur G. Baker, for Respondents.

SHAW, J.—It appears that the defendants owned a tract of land through which they had opened a street, and prior to its dedication for public use they agreed, for their mutual advantage, that it should be improved. The ownership of the land was not joint, but held in severalty, Markham owning approximately two-thirds of the tract and the remainder being owned jointly by Clinch and See, who entered into negotiations with plaintiffs for doing the work of improving the street known as Morning Gate Court, as a result of which the latter caused to be delivered to Clinch and See a letter reading as follows:

"Los Angeles, Cal., Aug. 12, 1913.
"Messrs. C. N. Clinch & Robt. T. See,
     "6401 Hollywood Blvd.,
         "Hollywood, Cal.
"Gentlemen:
    "Confirming our verbal bid of this date, we hereby propose to improve Morning Gate Court between Sunset Boulevard and Selma Avenue in Hollywood for the sum of $1475.00, payable upon completion of the work. [Then follows a description of the work proposed to be done.]

"If satisfactory to you the signing of this may substitute a good and sufficient contract between us for the said work.

"Yours very truly,

"Tryon & Brain,

"By W. C. Brain."

—followed by the word "Accepted." On the day of the receipt of this letter Clinch and See attached their signatures thereto and ordered Tryon & Brain to proceed with the work. At this time the defendant Markham was not in California, and did not return to California until the latter part of September. Tryon & Brain proceeded with the work until September 7th, at which time, under instructions from Clinch and See, they discontinued the same, the value of which, as performed, the court found was the sum of $1,240. Upon Markham's return to California on or about the twenty-fourth day of September, he, at the request of Clinch and See, attached his name to the letter, which was then, and after Tryon & Brain had completed the work, delivered to them.

The complaint filed contained two causes of action; the first to recover upon a common count for the value of the labor and work done and materials furnished, and the other a cause of action based upon the alleged contract against the defendants jointly for the sum mentioned therein; it being claimed—and with truth so far as Clinch and See, who suffered default, are concerned—that defendants, without the fault of plaintiffs, prevented the completion of the work. The findings made were in favor of plaintiffs, upon which judgment was entered against the defendants jointly for the full value of the work done, which, including interest, was $1,364, and from which Markham alone appeals.

As to the first cause of action stated, the court in effect found that Markham became indebted to plaintiffs for and on account of the services, work, and labor performed and materials furnished by the plaintiffs to said defendants and each of them, at the special instance and request of said defendants and each of them, in the sum of $1,475, which they and each of them promised to pay plaintiffs. The only evidence in support of this finding, and upon which to base any authority in Clinch and See to have the entire work done at Markham's expense, is the fact that he owned part of the land fronting on the street, was interested in and wished to have it improved, and according to See's testimony

he, upon leaving for the East, said to Clinch and See: "I will leave it [the improvement of the street] to you boys." A part of the street, however, as we have seen, was owned by "the boys"; and this evidence cannot be construed as sufficient to constitute Clinch and See as Markham's agents to do anything more than bind him to pay the cost of the improvement in so far as it affected his own property. Aside from any question involving the statute of frauds (to answer for the debt of another), the evidence does not purport to authorize Clinch and See to make a contract binding Markham to pay for the improvement of their land.

Upon the second cause of action, wherein plaintiffs sought to recover upon the written contract, the court found in substance that while the letter of Tryon & Brain was addressed to Clinch and See alone, with whom their negotiations were had, they intended it for Markham as well, his name being omitted for the reason that they did not know his initials. There is nothing in the letter showing such intention. On the contrary, it clearly appears that, as understood by plaintiffs, the letter, when accepted by Clinch and See, should be a substitute for a "good and sufficient contract between *us* for the said work." Clearly, the pronoun *"us"* as here used had reference to the plaintiffs and Clinch and See, with whom *only* plaintiffs were contracting. As shown by the record, all the work was done under the contract signed by Clinch and See, no work being performed after Markham signed the letter. Markham, under the circumstances, could not be bound for the entire cost of the improvement by the undisclosed intention of Tryon & Brain. Moreover, as to him, the letter considered as a contract is wholly lacking in the essential element of mutuality, since for its breach he could not, in any event, have recovered damages from plaintiffs for their failure to improve the property of Clinch and See. It appears that some time after the completion of the work, recovery of the cost for the whole of which is sought, and on his return from the East, Markham signed the letter. In doing so, however, his act cannot be construed other than as a ratification of the acts of Clinch and See in so far as they were authorized to act as his agents in binding him to pay his proportion of the cost of the work. The circumstances and evidence clearly show this to be the fact. Construing the evidence most strongly in favor of plaintiffs, it

shows only that Clinch and See were authorized by Markham to make a contract for and on his behalf for the improvement of the street so far as it affected his ownership thereof; the agreement between them, as stated by appellant's counsel, being "that Clinch and See would have the street put in and that Markham was to pay of the entire cost of the construction the proportion which the frontage of his property bore to the frontage of all the property in the tract." And this, in our opinion, is the extent of plaintiff's right to recover the cost of making the improvement from Markham.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.